

**Supporting Documents**

# NOTE

April 9, 2007                    Moorestown                    ,          NJ
*[Date]*                         *[City]*                              *[State]*


7916 Marion Ave, Pennsauken, NJ 08109
*[Property Address]*

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 225,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is

GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          6.750     %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First          day of each month beginning on June 1 2007          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 1, 2037

I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 780, Waterloo, IA 50702-0780, ATTN:
Payment Processing          or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,459.35          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          5.000          % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

LOAN NO: ████████████
MULTISTATE FIXED RATE NOTE — Single Family — Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT   Form 3200 1/01
*(Page 1 of 2)*          Initials: ___VX___
GMACM - CNM.0061.FIX (0401)

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note, is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Carla Talton                    -Borrower

_____ (Seal)
                                -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE

_____ (Seal)
                                -Borrower

D. HARKNESS
LIMITED SIGNING OFFICER
GMAC MORTGAGE, LLC f/k/a
GMAC MORTGAGE CORPORATION

_____ (Seal)
                                -Borrower

*[Sign Original Only]*

Prepared By
Mariam McAdorey
218 Lakeside Plaza Drive
Horsham, PA 19044-6717
for: GMAC Mortgage, LLC

CAMDEN COUNTY, NJ
JAMES BEACH, COUNTY CLERK
MTG-OR BOOK 08519 PG 0994
RECORDED 04/10/2007 09:02:00
FILE NUMBER
RCPT#: RECD BY: joelly
RECORDING FEES 210.00
MARGINAL NOTATION 0.00

After Recording Return To:

GMAC Mortgage, LLC
100 Witmer Road
Horsham, PA 19044-0963
ATTN: Records Management

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)     "**Security Instrument**" means this document, which is dated April 9, 2007     , together with all Riders to this document.

(B)     "**Borrower**" is

Carla Talton

Borrower is the mortgagor under this Security Instrument.

(C)     "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

NEW JERSEY – Single Family – Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3031 1/01
(Page 1 of 18)     Initials: _____
GMACM - CMS.0025.NJ (0001)

941

**(D)    "Lender" is**
GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation

Lender is a limited liability company                   organized and existing under the
laws of Delaware                                        . Lender's address is
100 Witmer Road, P.O. Box 963, Horsham, PA    19044

**(E)    "Note"** means the promissory note signed by Borrower and dated  April 9,
2007   . The Note states that Borrower owes Lender

Two Hundred Twenty Five Thousand and 00/100

Dollars (U.S. $    225,000.00    ) plus interest. Borrower has promised to pay this
debt in regular Periodic Payments and to pay the debt in full not later than
May 1, 2037                .

**(F)    "Property"** means the property that is described below under the heading "Transfer of
Rights in the Property."
**(G)    "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.
**(H)    "Riders"** means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider             ☐ Second Home Rider
☐ Balloon Rider              ☐ Biweekly Payment Rider        ☐ 1-4 Family Rider
☐ Other(s) [specify]         ☐ Planned Unit Development Rider

**(I)**    "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well
as all applicable final, non-appealable judicial opinions.
**(J)**    "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
**(K)**    "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone,
wire transfers, and automated clearinghouse transfers.
**(L)**    "Escrow Items" means those items that are described in Section 3.
**(M)**    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.

NEW JERSEY – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3031  1/01
GMACM - CMS.0025.NJ (0001) *(Page 2 of 18)*                            Initials:

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the
County

**[Type of Recording Jurisdiction]**

of Camden

**[Name of Recording Jurisdiction]**

According to Schedule "A" attached hereto and made a part thereof

which currently has the address of
7916 Marion Ave,

*[Street]*

Pennsauken
*[City]*
, New Jersey 08109
*[Zip Code]*
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

NEW JERSEY -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3031 1/01
GMACM - CMS.0025.NJ (0001) *(Page 3 of 18)*          Initials: _____

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

LOAN NO:
NEW JERSEY -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3031 1/01
GMACM - CMS.0025.NJ (0001) (Page 4 of 18)    Initials:

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts

NEW JERSEY -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3031 1/01
GMACM - CMS.0025.NJ (0001) *(Page 6 of 18)*                    Initials:

(including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters,

or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in

connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the

LOAN NO:
NEW JERSEY – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT **Form 3031 1/01**
GMACM - CMS.0025.NJ (0001) *(Page 9 of 18)*                    Initials: _____

amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

Book8519/Page1003

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

LOAN NO:
NEW JERSEY — Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3031  1/01
GMACM - CMS.0025.NJ (0001) *(Page 11 of 18)*  Initials: _____

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All Notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a

prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

NEW JERSEY – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3031 1/01
GMACM - CMS.0025.NJ (0001) *(Page 14 of 18)* Initials: _____

Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that

LOAN NO:
NEW JERSEY -- Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3031 1/01
GMACM - CMS.0025.NJ (0001) *(Page 15 of 18)*          Initials: _____

Book8519/Page1008

adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

NEW JERSEY – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3031  1/01
GMACM - CMS.0025.NJ (0001) *(Page 16 of 18)*       Initials: _____

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
Carla Talton                    -Borrower

_____ (Seal)
John W. Ta Hon                  -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

LOAN NO: ▮
Signed, sealed and delivered in the presence of:

_____

NEW JERSEY -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3031  1/01
GMACM - CMS.0025.NJ (0001) *(Page 17 of 18)*

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF NEW JERSEY,

COUNTY OF Burlington } SS

On this 9th day of April, 2007 , before me, the subscriber, personally appeared
Carla Talton and John W. Talton (non-borrowing spouse)

who, I am satisfied, IS the person(s) named in and who executed the within instrument, and thereupon acknowledged that SHE signed, sealed and delivered the same as HER act and deed, for the purposes therein expressed.

Notary Public

John J. Richardson, Esquire
Attorney-At-Law
State of New Jersey

NEW JERSEY – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3031 1/01
GMACM - CMS.0025.NJ (0001) *(Page 18 of 18)* Initials: CT JT



## SCHEDULE C

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in Township of Pennsauken, in the County of Camden, State of NJ:

BEGINNING at a point in the Southeasterly line of Marion Avenue (50.00 feet wide), Northeastwardly along the Southeasterly line of Marion Avenue, distant 305.06 feet from its intersection from the Northeasterly line of Gladwyn Avenue (50.00 feet wide), said point being in the division line between Lots 1 and 1.01, Block 3910, Tax Map and extends; thence

1. North 72 degrees 15 minutes 00 seconds East along the Southeasterly line of Marion Avenue, a distance of 94.67 feet to a point in the division line between Lots 1.01 and 1.02, Block 3910, Tax Map, a distance of 91.88 feet to a point in the line of Lot 4, Block 3910, Tax Map; thence

2. South 17 degrees 45 minutes 00 seconds East along the division line between Lots 1.01 and 1.02, Block 3910, Tax Map, a distance of 91.88 feet to a point in the line of Lot 4, Block 3910, Tax Map; thence

3. South 72 degrees 15 minutes 00 seconds West along the line of Lots 4, 5, 6 and 7, Block 3910, Tax Map, a distance of 94.67 feet to a point in the division line between Lots 1 and 1.01, Block 3910, Tax Map; thence

4. North 17 degrees 45 minutes 00 seconds West along the division line between Lots 1 and 1.01, Block 3910, Tax Map, a distance of 91.88 feet to the point and place of BEGINNING.

BEING part of Lot 1 to 11 on Plan of Osler Estates, filed in the Office of Camden County June 15, 1926.

FOR INFORMATION PURPOSES ONLY: BEING known as Lot 1.01, Block 3910 on the Official Tax Map of Township of Pennsauken.

Above description made in accordance with a survey made by John E. Gauntt Associates, Inc., dated December 12, 2006.

Commitment C.doc

CAMDEN COUNTY, NJ
JAMES BEACH, COUNTY CLERK
ASSN MTG-OR BOOK 08902 PG 1297
RECORDED 09/10/2008 14:36:45
FILE NUMBER
RCPT #:        RECD BY: suel
RECORDING FEES 40.00
MARGINAL NOTATION 10.00

*WHEN RECORDED MAIL TO:*
*PHELAN HALLINAN & SCHMIEG*
*400 Fellowship Road*
*Suite 100*
*Mt. Laurel, NJ 08054*
*LOAN NO. 0176221000*
*F & P #GMAC-2358*

## *ASSIGNMENT OF MORTGAGE*

FOR VALUE RECEIVED, **Mortgage Electronic Registration Systems Inc. as a nominee for GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation its successors and assigns**, the undersigned, as beneficiary or successor thereto, whose address is **P.O. Box 2026 Flint MI 48501**, hereby grants, conveys, assigns and transfers unto GMAC MORTGAGE, LLC, whose address is c/o **of GMAC Mortgage Corporation, 1100 Virginia Drive, Fort Washington, PA 19034**, its successors and assigns, all beneficial interest under that certain Mortgage dated April 9, 2007. Said Mortgage is recorded in the State of New Jersey, County of **CAMDEN.**

*Mortgage Recorded: APRIL 10, 2007*
*Original Mortgage Company: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR GMAC MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION ITS SUCCESSORS AND ASSIGNS*
*Original Mortgagors: CARLA TALTON*
*Original Loan Amount: $225,000.00*
*Book: 8519*
*Page: 994*
*Property Address: 7916 MARION AVENUE, PENNSAUKEN, 08109*

*TOGETHER* with the Bond, Note, or other Obligation therein described or referred to, and the money due and to become due thereon, with the interest.

*TO HAVE AND TO HOLD* the same unto the said Assignee, its successor and assigns, forever subject only to all the provisions contained in the said Mortgage and the Bond, Note or other Obligation. And the said Assignor hereby constitutes and appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in equity, in the Assignor's name, place and stead but at the Assignee's cost and expense to have, use and take all lawful ways and means for the recovery of all the said money and interest; and in case of payment, to discharge the same as fully as the Assignor might or could do if these presents were not made.

*I AGREE TO THE TERMS OF THIS ASSIGNMENT.*

*Witnessed or Attested by:*

Judith T. Romano, _(Seal)_
Judith T Romano,
Assistant Secretary
and Vice President

## NOTARY ACKNOWLEDGMENT

**CAPACITY CLAIMED BY SIGNER:** Assistant Secretary and Vice President

**OF** Mortgage Electronic Registration Systems Inc. as a nominee for GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation its successors and assigns

**STATE OF** *Pennsylvania*
**COUNTY OF** *Philadelphia*

On, **8/27/08** , before me, **Thomas Strain**, a Notary Public, personally appeared Judith T Romano Assistant Secretary and Vice President, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged that he/she executed the same in her authorized capacity and that by her signature on the instrument, the entity upon behalf of which the person acted executed the instrument.

*WITNESS my hand and official seal.*

*Notary Public*

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
THOMAS P. STRAIN, Notary Public
City of Philadelphia, Phila. County
My Commission Expires February 4, 2010

CAMDEN COUNTY, NJ
CAMDEN COUNTY CLERK'S OFFICE
ASSN MTG-OR BOOK 09014 PG 1655
RECORDED 04/24/2009 10:13:28
FILE NUMBER
RCPT#:     RECD BY: audreyk
RECORDING FEES 40.00
MARGINAL NOTATION 10.00

**WHEN RECORDED MAIL TO:**
*PHELAN HALLINAN & SCHMIEG*
*400 Fellowship Road*
*Suite 100*
*Mt. Laurel, NJ 08054*

## CORRECTIVE ASSIGNMENT OF MORTGAGE*

*FOR VALUE RECEIVED,* **Mortgage Electronic Registration Systems Inc. as a nominee for GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation its successors and assigns,** the undersigned, whose address is **P.O. Box 2026 Flint MI 48501,** hereby confirms the grant, conveyance, assignment and transfer unto GMAC MORTGAGE, LLC, whose address is **c/o of GMAC Mortgage Corporation, 1100 Virginia Drive, Fort Washington, PA 19034,** its successors and assigns, all right, title, and interest under that certain Mortgage dated April 9, 2007. Said Mortgage is recorded in the State of New Jersey, County of **CAMDEN.**

*Mortgage Recorded: APRIL 10, 2007*
*Original Mortgage Company: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR GMAC MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION ITS SUCCESSORS AND ASSIGNS*
*Original Mortgagors: CARLA TALTON*
*Original Loan Amount: $225,000.00*
*Book: 8519*
*Page: 994*
*Property Address: 7916 MARION AVENUE, PENNSAUKEN, NJ 08109*

*This Assignment is being re-recorded pursuant to court inquiry regarding the notarization in the assignment recorded on 09/10/2008 in Book 8902, Page 1297.
This assignment should hold the effective date of the original assignment of 08/27/2008.

**TOGETHER** with the Obligation therein described or referred to, and any other obligation mentioned in the Mortgage and all indebtedness and claim of every kind secured thereby. The transfer of the mortgage and accompanying rights was effective at the time the loan was sold and consideration passed to the Assignee. This assignment is solely intended to describe the instrument(s) sold, transferred, or assigned in a form sufficient for recording purposes.

**TO HAVE AND TO HOLD** the same unto the said Assignee, its successor and assigns, forever subject only to all the provisions contained in the said Mortgage.

IN WITNESS WHEREOF THIS CORRECTIVE ASSIGNMENT HAS BEEN
EXECUTED THIS 16th day of April, 2009.

_Judith T. Romano_ (Seal)
Printed Name: Judith T Romano
Assistant Secretary and Vice President

## NOTARY ACKNOWLEDGMENT

*CAPACITY CLAIMED BY SIGNER:* Assistant Secretary and Vice President

*OF*   Mortgage Electronic Registration Systems Inc.

### STATE OF PENNSYLVANIA
### COUNTY OF PHILADELPHIA

On 4/16/09, before me, Maura Hutchinson, a Notary Public, personally appeared Judith
T Romano, Assistant Secretary and Vice President, who proved to me on the basis of satisfactory
evidence to be the person whose name is subscribed to the within instrument and acknowledged
that he/she executed the same in his/her authorized capacity and that by her signature on the
instrument, the entity upon behalf of which the person acted executed the instrument.

*WITNESS my hand and official seal.*

Maura Hutchinson

**Notary Public**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MAURA HUTCHINSON, Notary Public
City of Philadelphia, Phila. County
My Commission Expires March 6, 2012

**Recording Requested By:**
Residential RealEstate Review

**When Recorded Mail To:**
Collateral Document Services
Residential RealEstate Review
3217 S. Decker Lake Drive
Salt Lake City, UT, 84119
(800) 258-8602

TS Ref #

## GAP CORPORATE ASSIGNMENT OF MORTGAGE
***GAP ASSIGNMENT BEING RECORDED TO COMPLETE THE CHAIN OF TITLE FROM
THE ASSIGNMENT RECORDED ON 04/24/2009 AS INSTRUMENT # 2009027735 IN
BOOK 09014 AND PAGE 1655 TO THE ASSIGNMENT RECORDED ON 07/17/2013 AS
INSTRUMENT # 2013055169 IN BOOK 9845 AND PAGE 951***

NJ/CAMDEN
MERS #                     MERS Phone #: (888) 679-6377

Assignment Prepared on: November 17, 2022

**Assignor: GMAC MORTGAGE, LLC BY PHH MORTGAGE CORPORATION SUCCESSOR BY MERGER TO
OCWEN LOAN SERVICING, LLC, at 5720 PREMIER PARK DRIVE, WEST PALM BEACH, FL 33407**

**Assignee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS MORTGAGEE, AS
NOMINEE FOR GMAC MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION, ITS SUCCESSORS
AND ASSIGNS, at P.O. Box 2026, Flint, MI, 48501-2026**

For value received, the Assignor does hereby grant, assign, transfer and convey, unto the above-named Assignee all
interest under that certain Mortgage Dated: 4/9/2007, in the amount of $225,000.00, executed by CARLA TALTON
to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC ("MERS") AS NOMINEE FOR GMAC
MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS. Recorded:
4/10/2007, Instrument #: 2007036669, Book: 08519, Page: 0994 in CAMDEN County, State of New Jersey.

Property Address: 7916 MARION AVE, PENNSAUKEN, NJ, 08109

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms
and conditions of the above-described Mortgage.

GMAC MORTGAGE, LLC BY PHH MORTGAGE CORPORATION SUCCESSOR BY MERGER TO OCWEN
LOAN SERVICING, LLC ITS ATTORNEY IN FACT

On: 11/17/2022

By        *Kelley Earle*

Name:     Kelley Earle

Title:    Senior Servicing Operations Specialist

STATE OF FLORIDA
COUNTY OF PALM BEACH

On 11/17/2022, before me,      **Netty N. Bangala**        a Notary Public in and for PALM BEACH in the
State of FLORIDA, personally appeared Kelley Earle, Senior Servicing Operations Specialist , PHH
MORTGAGE CORPORATION SUCCESSOR BY MERGER TO OCWEN LOAN SERVICING, LLC ITS
ATTORNEY IN FACT FOR GMAC MORTGAGE, LLC, personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowl-
edged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their sig-
nature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instru-
ment

WITNESS my hand and official seal,

_____
       Netty N. Bangala
Notary Expires _____AUG 0 7 2023_____  / #

Notary Public State of Florida
Netty N. Bangala
My Commission
Expires 08/07/20

NJ/CAMDEN



# Camden County
## Document Summary Sheet

CAMDEN COUNTY CLERK'S OFFICE

520 MARKET ST

CAMDEN NJ 08102

ASSN MTG-OR BOOK 9845 PG 951
RECORDED 07/17/2013 07:53:08
FILE NUMBER
RCPT #          RECD BY: eRecord
RECORDING FEES 40.00
MARGINAL NOTATION FEE 10.00

**Official Use Only**

| Transaction Identification Number | |
|---|---|

| | |
|---|---|
| **Submission Date**(mm/dd/yyyy) | 07/08/2013 |
| **No. of Pages** (excluding Summary Sheet) | 1 |
| **Recording Fee** (excluding transfer tax) | $40.00 |
| **Realty Transfer Tax** | $0.00 |
| **Total Amount** | $40.00 |

**Return Address**   *(for recorded documents)*

INDECOMM GLOBAL SERVICES
2925 COUNTRY DR.
ST. PAUL, MN 55117

| **Document Type** | ASSIGNMENT OF MORTGAGE |
|---|---|

**Municipal Codes**

CAMDEN COUNTY                                      99

**Batch Type**

L2 - LEVEL 2 (WITH IMAGES)

**Bar Code(s)**

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*



## Camden County
## Document Summary Sheet

| Type | ASSIGNMENT OF MORTGAGE |
|---|---|
| Consideration | |
| Submitted By | INDECOMM GLOBAL SERVICES (INDECOMM GLOBAL SERVICES) |
| Document Date | 07/02/2013 |
| Reference Info | |

**ASSIGNMENT OF MORTGAGE**

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| OR | 8519 | 994 | 2007036669 | 04/10/2007 |

| ASSIGNOR | Name | Address |
|---|---|---|
| | CARLA TALTON | |
| | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | |
| | GMAC MORTGAGE LLC | |
| | GMAC MORTGAGE CORPORATION | |

| ASSIGNEE AND MORTGAG | Name | Address |
|---|---|---|
| | OCWEN LOAN SERVICING LLC | |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
| | | | | | |

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

BK 9845 PG 952

When Recorded Return To
Indecomm Global Services
2925 Country Drive
St Paul, MN 55117

Prepared By
Pang Lee
Indecomm Global Services
2925 CountryDrive
St Paul, MN 55117

## Assignment of Mortgage

Dated July 2, 2013

MERS Phone 888-679-6377

For value received Mortgage Electronic Registration Systems, Inc., as nominee for GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation, its successors and assigns, P.O. Box 2026, Flint, MI 48501-2026, the undersigned hereby grants, assigns and transfers to Ocwen Loan Servicing, LLC all beneficial interest under a certain Mortgage dated April 9, 2007 executed by CARLA TALTON and recorded in Book 08519 on Page(s) 0994 as Document Number 2007036669 on April 10, 2007 of the official records of the County Clerk of Camden County, New Jersey

MUNICIPALITY Pennsauken Twp.

Mortgage Electronic Registration Systems, Inc , as
nominee for GMAC Mortgage, LLC f/k/a GMAC
Mortgage Corporation, its successors and assigns

By _____

Lee Lisa Vang,
Assistant Secretary

STATE OF Minnesota )
)SS
COUNTY Ramsey )

On July 2, 2013 before me, Sandra Jean Kinnunen , Notary Public in and for said State personally appeared Lee Lisa Vang , Assistant Secretary of Mortgage Electronic Registration Systems, Inc., as nominee for GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation, its successors and assigns, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument WITNESS my hand and official seal

SANDRA JEAN KINNUNEN
Notary Public-Minnesota
My Commission Expires Jan 31, 2016

_____
Sandra Jean Kinnunen, Notary Public
My Commission expires January 31, 2016

CAMDEN COUNTY, NJ
CAMDEN COUNTY CLERK'S OFFICE
ASSN MTG-OR BOOK 11077 PG 694
RECORDED 02/22/2019 10:04:24
FILE NUMBER
RCPT ███████ RECD BY: eRecord
RECORDING FEES 42.00
MARGINAL NOTATION FEE 10.00



# Camden County
## Document Summary Sheet

CAMDEN COUNTY CLERK

520 MARKET ST

CAMDEN NJ 08102

**Official Use Only**

| Transaction Identification Number | | |
|---|---|---|
| **Submission Date**(mm/dd/yyyy) | 02/11/2019 | |
| **No. of Pages** (excluding Summary Sheet) | 1 | |
| **Recording Fee** (excluding transfer tax) | $42.00 | |
| (Convenience Charge of $2.00 included) | | |
| **Realty Transfer Tax** | $0.00 | |
| **Total Amount** | $42.00 | |

| **Document Type** | ASSIGNMENT OF MORTGAGE |
|---|---|

**Municipal Codes**
CAMDEN COUNTY                                        99

**Batch Type**    L2 - LEVEL 2 (WITH IMAGES)

**Return Address**    (for recorded documents)
SECURITY CONNECTIONS INC
1795 INTERNATIONAL DRIVE
IDAHO FALLS, ID 83402

**Additional Information (Official Use Only)**

*• DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Page 1 of 2



## Camden County
## Document Summary Sheet

| | Type | ASSIGNMENT OF MORTGAGE | | | | |
|---|---|---|---|---|---|---|
| | **Consideration** | | | | | |
| | **Submitted By** | SIMPLIFILE, LLC. (SIMPLIFILE) | | | | |
| | **Document Date** | 02/05/2019 | | | | |
| | **Reference Info** | | | | | |
| | **Book ID** | **Book** | **Beginning Page** | | **Instrument No.** | **Recorded/File Date** |
| | | 08519 | 0994 | | 2007036669 | |
| **ASSIGNMENT OF MORTGAGE** | **ASSIGNOR** | **Name** | | | **Address** | |
| | | OCWEN LOAN SERVICING LLC | | | | |
| | **ASSIGNEE AND MORTGAG** | **Name** | | | **Address** | |
| | | CARLA TALTON SELECT PORTFOLIO SERVICING INC | | | | |
| | **Parcel Info** | | | | | |
| | **Property Type** | **Tax Dist.** | **Block** | **Lot** | **Qualifier** | **Municipality** |
| | | | | | | |

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF CAMDEN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Recording Requested By:
OCWEN LOAN SERVICING, LLC

When Recorded Return To:

OCWEN LOAN SERVICING, LLC
1795 INTERNATIONAL WAY
IDAHO FALLS, ID 83402

## CORPORATE ASSIGNMENT OF MORTGAGE

Camden, New Jersey
SELLER'S SERVICING ███████ "TALTON"
INVESTOR'S LOAN #: ██████
OLD SERVICING #: ██████

Date of Assignment: **FEB 0 6 2019**

Assignor: OCWEN LOAN SERVICING, LLC at 1661 WORTHINGTON ROAD, SUITE 100, WEST PALM BEACH, FL 33409

Assignee: SELECT PORTFOLIO SERVICING, INC. at 3217 S DECKER LAKE DRIVE, SALT LAKE CITY, UT 84119-3284

Executed By: CARLA TALTON To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR GMAC MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 04/03/2007 Recorded: 04/10/2007 in Book/Reel/Liber: 08519 Page/Folio: 0994 as Instrument No.: 2007036669 in the County of Camden, State of New Jersey.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $225,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

OCWEN LOAN SERVICING, LLC

On **FEB 0 6 2019**

By: _____
Robert Branch
Senior Servicing Operations Specialist

STATE OF FLORIDA
COUNTY OF PALM BEACH

On **FEB 0 6 2019** , before me, **Tim Rosa** , a Notary Public in and for Palm Beach County in the State of Florida, personally appeared Robert branch, Senior Servicing Operations Specialist of OCWEN LOAN SERVICING, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Tim Rosa
Notary Expires: 9/18/2020

Notary Public State of Florida
Tim Rosa
My Commission ████
Expires 09/18/2020

(This area for notarial seal)

**Prepared by: Felicia Perry**
**After Recording Return To:**
Ocwen Loan Servicing, LLC
Attn: Contract Management
P.O. Box 24737
West Palm Beach, FL 33416
Investor #: ███████

_____[Space Above This Line for Recording Data]_____

# LOAN MODIFICATION AGREEMENT

| | |
|---|---|
| Servicer: | Ocwen Loan Servicing, LLC |
| Original Mortgagor / Maker: | **CARLA TALTON** |
| Marital Status: | **MARRIED** |
| Original Mortgagee / Payee: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) SOLELY AS NOMINEE FOR GMAC MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION |
| Original Amount: $ | 225,000.00 |
| Original Mortgage Date: | APRIL 09, 2007 |
| Date Recorded: | APRIL 10, 2007 |
| Reel / Book: | 08519     Page / Liber: 0994 |
| CRFN / Document/Instrument #: | ███████ |
| AP# / Parcel #: | ███████████████ |
| Property Address: | **7916 MARION AVE** |
| City:   PENNSAUKEN | County: CAMDEN          State:  NEW JERSEY |

| | |
|---|---|
| Present Holder of the Note and Lien: | OCWEN LOAN SERVICING, LLC |
| Holder's Mailing Address: | |
| (Including county) | 5720 Premier Park Dr, West Palm Beach, FL 33407 Palm Beach County |

New Money ███████████████████

LEGAL DESCRIPTION: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Registered Land (OH Only):     ☐ YES     ☐ NO
AFN# (OH Only):     _____

District (NYC Only): _____ Section: _____ Block: _____ Lot: _____

District (MA Only): _____

Lot (DC Only): _____     Square: _____

This document was prepared by Ocwen Loan Servicing, LLC

**After Recording Return To:**
Ocwen Loan Servicing, LLC
Attention: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838

_____ [Space Above This Line For Recording Data] _____

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 12 day of Apr, 2016, between  Carla Talton, JOHN W TALTON ("Borrower") and Ocwen Loan Servicing, LLC, Lender/Servicer or Agent for Lender/Servicer ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument") dated 04/09/2007 and recorded in the Records of CAMDEN County, NJ and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

7916 Marion Ave Pennsauken, NJ 08109-3423

the real property described being set forth as follows:

**(Legal Description Attached if Applicable for Recording Only)**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 04/01/2016, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $237,328.68, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. $57,805.63 of the New Principal Balance shall be deferred ("Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $179,523.05. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 4.00000%, from 04/01/2016. Borrower promises to make monthly payments of principal and interest of U.S. $750.30, beginning on 05/01/2016, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. Borrower promises to also pay any applicable monthly escrow payments as outlined in this agreement. The initial monthly escrow amount is $789.34. The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law. The yearly rate of 4.00000% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The Maturity Date will be 04/01/2056 ("Maturity Date").

3. Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and the Security Instrument by the earliest of: (i) The date Borrower sells or transfers an interest in the Property, (ii) The date Borrower pays the entire Interest Bearing Principal Balance, or (iii) The new Maturity Date.

   If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b) All terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender or not permitted per State or federal law.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower. Borrower will execute such other documents as may be reasonably necessary to correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement. Borrower agrees to deliver any such corrective documents within ten (10) days after Borrower receives the Lender's written request for such replacement.

(f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) Name, address, and telephone number, (ii) Social Security Number, (iii) Credit score, (iv) Income, (v) Payment history, (vi) Account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging  ☐.

6. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked and Borrower has been advised of the amount needed to fully fund the Escrow Items.

Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum ("Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in

writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

7. Notwithstanding anything to the contrary contained in this Agreement, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

Severability: Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be or become prohibited or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Agreement.

## BORROWER ACKNOWLEDGEMENT

**IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to Ocwen Loan Servicing.**

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

4/27/16
Date

Carla Talton

4/27/16
Date

JOHN W TALTON

Page 6

## BORROWER ACKNOWLEDGEMENT

(CONTINUED)

State of _New Jersey_

County of _Camden_

On this 27th day of _Apr. l_ , _2016_ , before me, the undersigned, a Notary Public in and for said county and state, personally appeared Carla Talton, JOHN W TALTON personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

Notary Public

My Commission
Expires:       _10/22/2020_

**MATTHEW I. SIETMANN**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires 10/22/2020**

Page 7

## MODIFICATION DUE ON TRANSFER RIDER

THIS MODIFICATION DUE ON TRANSFER RIDER, effective 04/12/2016, is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement of the same date made by Carla Talton, JOHN W TALTON (the "Borrower") and Ocwen Loan Servicing, LLC, Lender/Servicer or Agent for Lender/Servicer ("Lender") covering the Property described in the Loan Modification Agreement located at

7916 Marion Ave Pennsauken, NJ 08109-3423

In addition to the covenants and agreements made in the Loan Modification Agreement, the Borrower and Lender covenant and agree as follows:

A. Notwithstanding any other covenant, agreement, or provision of the Note and Security Instrument, as defined in the Loan Modification Agreement, the Borrower agrees as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Loan Modification Agreement.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

B. Except as otherwise specifically provided in this Modification Due on Transfer Rider, the Loan Modification Agreement, the Note and Security Instrument will remain unchanged and in full effect.

| | |
|---|---|
| **4/27/16** | **Carla Saltz** |
| Date | Carla Talton |
| **4/27/16** | **John W Talton** |
| Date | JOHN W TALTON |

# LENDER ACKNOWLEDGEMENT
## (For Lender's Signature Only)

Lender acknowledges that no representations, agreements or promises were made or any of its representations other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

Ocwen Loan Servicing

_Felicia Perry_
**Authorized Officer**   Felicia Perry

MAY 0 9 2016

**Date**

State of _____ Florida

County of _____ Palm Beach

On this 9 day of May 2016 before me, the undersigned, a Notary Public in and for said county and state, personally appeared Felicia Perry personally known to me or identified to my satisfaction to be the person who executed the within instrument as Authorized Officer of Ocwen Loan Servicing, LLC., said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

Notary Public   Tamara Casseus

Notary Public State of Florida
Tamara Casseus
My Commission
Expires 05/13/2018

My Commission
Expires:   MAY 1 3 2018

OCWEN LOAN SERVICING, LLC

By:  Felicia Perry
Authorized Officer
Date:  12-May-2016

WITNESSES:

Gisele Cazeau

Bendiane Zephir

STATE OF Florida }
COUNTY OF Palm Beach }

On 12-May-2016, before me, the undersigned Notary Public, personally appeared Felicia Perry , Authorized Officer, of Ocwen Loan Servicing, LLC, personally known to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the individual(s) or person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the county of Palm Beach, State of Florida.

Witness my hand and official seal.

Notary Public State of Florida
Tamara Casseus
My Commission
Expires 05/13/2018

Notary        State of Florida        Tamara Casseus
              County of Palm Beach

Prepared by:
Felicia Perry

Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

# EXHIBIT "A"

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in Township of Pennsauken, in the County of Camden, State of NJ:

BEGINNING at a point in the Southeasterly line of Marion Avenue (50.00 feet wide), Northeastwardly along the Southeasterly line of Marion Avenue, distant 305.06 feet from its intersection from the Northeasterly line of Gladwyn Avenue (50.00 feet wide), said point being in the division line between Lots 1 and 1.01, Block 3910, Tax Map and extends; thence

1. North 72 degrees 15 minutes 00 seconds East along the Southeasterly line of Marion Avenue, a distance of 94.67 feet to a point in the division line between Lots 1.01 and 1.02, Block 3910, Tax Map, a distance of 91.88 feet to a point in the line of Lot 4, Block 3910, Tax Map; thence

2. South 17 degrees 45 minutes 00 seconds East along the division line between Lots 1.01 and 1.02, Block 3910, Tax Map, a distance of 91.88 feet to a point in the line of Lot 4, Block 3910, Tax Map; thence

3. South 72 degrees 15 minutes 00 seconds West along the line of Lots 4, 5, 6 and 7, Block 3910, Tax Map, a distance of 94.67 feet to a point in the division line between Lots 1 and 1.01, Block 3910, Tax Map; thence

4. North 17 degrees 45 minutes 00 seconds West along the division line between Lots 1 and 1.01, Block 3910, Tax Map, a distance of 91.88 feet to the point and place of BEGINNING.

BEING part of Lot 1 to 11 on Plan of Osler Estates, filed in the Office of Camden County June 15, 1926.

FOR INFORMATION PURPOSES ONLY: BEING known as Lot 1.01, Block 3910 on the Official Tax Map of Township of Pennsauken.

Above description made in accordance with a survey made by John E. Gauntt Associates, Inc., dated December 12, 2006.